## Edwin R. Miller v. Long-Bell Lumber Company.

No. A-2212.  Decided July 15, 1949.
(222 S. W., 2d Series, 244.)

*Poteet* and *Pruitt* and *Warren Pruitt,* all of Vernon, for petitioner.

The court erred in rendering judgment for the ceiling price of those items for which the court found there was an overcharge under the provisions of the Emergency Price Control Act of 1942, and the regulations promulgated thereunder. Davis v. Sittig, 65 Texas 497; Minardus v. Zapp, 112 S. W. (2d) 496; Marathon Oil Co. v. Hadley, 107 S. W. (2d) 883.

*Warlick, Bunnenberg & Douglas* and *Harry Bunnenberg,* all of Vernon, for respondent.

MR. JUSTICE HARVEY delivered the opinion of the Court.

The Long-Bell Lumber Company sued Edwin R. Miller upon an open verified account in the sum of $12,906.17 for goods, wares, and merchandise sold to Miller at various times between January 1, 1946, and May 2, 1947. It was stipulated at the time of the trial that all of the items of merchandise, amounting to several thousand in number, as shown in about 550 invoices, were sold and delivered by the plaintiff to the defendant on the dates specified in the invoices. In addition, it was agreed by the parties that the account correctly allowed credit for all payments that had been made thereon by the defendant. In defense of the cause of action, Miller pleaded that he was not liable on the account by reason of the fact that the Long-Bell Lumber Company had charged higher prices than were permitted under the Emergency Price Control Act of 1942 or its regulations and amendments, 50 U. S. C. A. Appendix, sec. 904. The account was approved by him except in so far as it might be defeated by "taint of illegality" arising out of the violation, if any, of the ceiling prices specified in the Act in question. The trial judge ruled that he would take judicial notice of the ceiling prices applicable to the merchandise listed in the account under the Emergency Price Control Act, and no evidence with reference to the ceiling prices thereon was permitted to be introduced on the trial of the case. There are authorities, as well as the federal statutes, which sustain the trial court's ruling in that respect. 44 U. S. C. A., sec. 307; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; Thornton v. U. S., 271 U. S. 414, 46 S. Ct. 585, 70 L. Ed. 1013; U. S. v. Lutz, 3rd Cir., 142 F. (2d) 985; U. S. v. Fried, 2nd Cir., 149 F. (2d) 1011, cert. den. 326 U. S. 756, 66 Sup. Ct. 97, 90 L. Ed. 454; Keyser v. Allen, 149 Neb. 449, 31 N. W. (2d) 309; State ex rel. Bowles v. Olson, 175 Or. 98, 151 P. (2d) 723; Weatherford v. Griffin, Tex. Civ. App., 187 S. W. (2d) 406, error dismissed; Martin v. Burcham, Tex. Civ. App., 203 S. W. (2d) 807. The jury found, in response to the only issue submitted to them, that the reasonable value of the goods and materials itemized in the account, after the allowance of all credits, was $12,906.17, which was

the amount sued for by the plaintiff. No other issues were submitted to the jury. Judgment was entered by the trial judge for the sum found by the jury in its verdict, less $790.69, which he found to be the total sum charged by the plaintiff in excess of the O. P. A. ceiling prices on 61 items in the account. No appeal was taken by the plaintiff from the court's action in making such deduction. The Court of Civil Appeals affirmed the judgment of the trial court, and Miller made application for writ of error. 217 S. W. (2d) 867.

The first point complained of by petitioner is that the Court of Civil Appeals erred in holding that he had not perfected his appeal to that court under the requirements of Rule 324, T. R. C. P., which provides that in all jury cases tried in the county or district court, if any party desires to appeal from a judgment of the trial court, if such judgment is rendered five days or more before the adjournment of the court for the term or if, upon request or for any other reason, the court continues the term so as to cover a period of five days from the rendition of a judgment, a motion for new trial shall be filed. The Court of Civil Appeals correctly stated the rule in its opinion, and where the rule has not been complied with, on appeal, of necessity, points of error assigned will not be considered by reason of the fact that they had not been presented to the trial judge in a motion for a new trial. The pertinent dates with respect to the time when the judgment was rendered, as well as the date of the expiration of the term of court during which the judgment was filed, do not appear in the opinion of the Court of Civil Appeals but are set out in a per curiam opinion filed on motion for rehearing. The essential facts also are ascertainable from the transcript in the case. The record discloses that the trial court entered an order on July 3, 1948, calling a special term of court to extend from July 12, 1948, until midnight of July 17, 1948, in order to dispose of the business of the court. The instant case was tried during the extended special term. A jury verdict was returned on July 15, 1948; on that date the term was extended until midnight, August 14, 1948. Judgment was rendered by the court on the jury verdict on August 12, 1948. Thus it will be seen that there was not a period of full five days between the date of the rendition of the judgment on August 12 and the end of the term on August 14. None of the facts as enumerated are in dispute. The Court of Civil Appeals reached the conclusion that it was incumbent on the appellant to show that he was excused for his failure to file a motion for new trial by in some manner showing that the extended special term which adjourned on August 14 had not been further extended.

■ We think the appellant made a sufficient showing on the record before us in compliance with Rule 324, as to his failure to file a motion for a new trial. The transcript shows the date of the judgment, as well as the expiration date of the extended term. The district clerk's certificate to the transcript was to the effect that the transcript contained true and correct copies of all instruments requested by the appellant to be included therein. Prima facie the term expired at midnight on August 14, 1948, as shown by the order of extension. The additional burden was not on appellant to produce proof that the term had not been extended further; rather, the burden of negativing the prima facie showing as reflected by the record was on appellee if he had desired to benefit from the production of another order of extension of the term, if any had been made. In order to overcome the presumption, of the record showing, of the ending of the term of court on the date as set out in the order of extension, the burden would be on him to have included in the transcript such other orders, if any, that would indicate a different date for the expiration of the term.

■ After disposing of the question of whether or not the appellant had failed to file the requisite motion for a new trial in the trial court, the Court of Civil Appeals next considered the points of error assigned dealing with the appeal on its merits. The principle of law urged by the petitioner to the effect that courts will not lend their aid in enforcing illegal contracts is well recognized. As said in the early case of Heirs of Hunt v. Heirs of Robinson, 1 Texas 748, 759 (1846) : "It is believed to be a rule of universal application that to undertake to do an act forbidden by the law of the place where it is to be done is an invalid agreement, and imposes no legal obligation." The law in this respect has not varied in Texas down to the present, with some distinctions and refinements, of course, in its application to varying factual situations. For example, see American Nat. Ins. Co. v. Tabor, 111 Texas 155, 230 S. W. 397. However, in the case under consideration the facts and circumstances are not such as to bring it within the rule quoted. There are two cases cited by petitioner by Courts of Civil Appeals in Texas which were decided upon certain violations of the regulations of the Office of Price Administration. Morgan Ice Co. v. Barfield, Tex. Civ. App., 190 S. W. (2d) 847; Lewis v. Jackson, Tex. Civ. App., 199 S. W. (2d) 853. In each of those cases the court refused to enforce the contract, which was held void under maximum price provisions of the Emergency Price Control Act, on the basis that in each case the parties entered into a contract which was in violation of the law. In the first case the contract was entered into in violation of the law and for

the purpose of defeating the provisions of the statute; in the other case the court held that the transaction was fabricated and in violation of law. Relief was denied in each instance to the party seeking same. In the instant case the sale of the merchandise in question was not illegal in itself. The illegality of the transaction, if any, consisted in the fact that an overcharge was made on certain specified articles of merchandise. The penalty in such case as provided by the statutes relating thereto, which hereinafter will be discussed, in the event the overcharge was not intentional is merely a return of the amount of such overcharge.

The petitioner takes the position that he is not asking enforcement of any penalties, but, rather, inasmuch as some of the items in the account sued upon were above established ceiling prices, that the entire account was "tainted with illegality" and therefore the plaintiff could not maintain his suit. Alternatively, he contends that if he is incorrect in the first instance, at least he is not liable for the value of the 61 specific items found by the court to have been charged to him at greater than established ceiling prices. The total amount charged for these 61 items, as found by the trial judge, was $4,519.91. Neither of these points is tenable. In the first place, quite obviously the running account extending over a period of 16 months was not an indivisible transaction of such a nature that an overcharge on one item would affect another item which was within the maximum ceiling price. By reason of the fact that in January, 1946, an overcharge was made on one bill of lumber, it would not follow that another bill of goods sold by the same vendor to the same vendee a year later at not more than the maximum ceiling price would be "tainted with illegality." In the next place, with regard to the contention made by the petitioner that in any event he should not be required to pay for the reasonable value of the 61 items upon which the trial court found there were charges in excess of the ceiling price on such articles, this point is likewise without merit. The Emergency Price Control Act, 50 U. S. C. A. Appendix, sec. 904, provides as follows:

"(a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2 (section 902 of this Appendix) * * *."

Section 825(b), supra, 1949 Supplementary Pamphlet, provides that a person who violates any provisions of section 904, supra, shall be subject to certain enumerated penalties. In section 925(e) it is provided, however, that if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, he shall be penalized only in the amount of the overcharge or overcharges. In the case now under consideration, the trial court after taking judicial knowledge of the ceiling prices on the 61 items upon which he found that a charge in excess of O. P. A. maximum prices had been charged, determined that the amount of overcharge on those 61 items was the sum of $790.69. He reduced the amount of the reasonable value of the goods contained in the account, which the jury found was $12,906.17, by the exact amount of the overcharges. Therefore, presumptively he found that the overcharges were neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. There is substantial evidence in the record to sustain such an implied finding. The manager of the lumber yard of Long-Bell Lumber Company testified that they never knowingly made an overcharge on any item sold by them; that quite often, in order to be sure about the allowable prices, items were sold under the ceilings established by the Office of Price Administration; that they made every reasonable effort to carry out the regulations of the Administrator; that the business of the Long-Bell Lumber Company was checked by the O. P. A. and no complaint was filed against it; and so on.

It will be seen from the statutes to which reference is above made that the question of intent is of vital importance in disposing of problems presented as is this case by reason of overcharges in violation of the regulations of the Office of Price Administration. In construing these statutes and the rules and regulations promulgated thereunder, the legislative intent in enacting them must be considered. It is apparent that by the terms of section 925(e), supra, which provides for remedies in behalf of a buyer who has been charged prices for commodities above ceiling prices, it was intended that the only penalty incident to an unintentional violation of the provisions of section 904 was a return by the one making the overcharge of the amount in excess of the maximum prices allowed. It was not meant that under such circumstances the seller should suffer the additional penalty of forfeiting the property sold. In addition, section 925(b), which provides a fine and other punishment for violations of section 904, expressly limits the applica-

tion of such penalties to willful violations. The penalty assessable under the facts of this case was the amount of the overcharges, as was decreed by the trial judge. Many authorities might be cited in this connection but we deem it unnecessary to list them. See Notes of Decisions, 50 U. S. C .A. Appendix, sec. 925(e), 1949 Supplementary Pamphlet, p. 336, Note 8, for collation of cases. The cases of Harris v. Runnels, 53 U. S. 79 (12 How. 79), 13 L. Ed. 901; Gammon v. Howard W. Scott, Inc., 4th Cir., 16 F. (2d) 902; Macco Const. Co. v. Farr, 9th Cir., 137 F. (2d) 52; In re T. H. Bunch Co., E. D. Ark., 180 Fed. 519; and McBroom v. Scottish Mortg. & Land Inv. Co., 153 U. S. 318, 323, 14 S. Ct. 852, 38 L. Ed. 729, are a few of those in our national courts that discuss the matter of legislative intent. In the last-mentioned case we find this statement: "Of course, effect must be given to the intention of the legislature as manifested by the words of the statute, interpreted according to their natural signification. And in ascertaining that intention, all of its provisions must be considered together." We are of the opinion that the Emergency Price Control Act considered as a whole cannot be construed to mean that in cases of an unintentional violation, as here, of some portion of its provisions by a transaction not inherently unlawful that any other penalty or forfeiture can be applied other than that which is prescribed in the Act. The general rule as to the nonenforceability of illegal contracts is not applicable; the illegality is not of that character which renders void the act done.

The judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion delivered July 15, 1949.

No motion for rehearing on file.