**SIGNAL PEAK ENTERPRISES OF TEXAS, INC. and Cecil Stephens, Appellants,**

v.

**BETTINA INVESTMENTS, INC. and Oakhill, Incorporated, Appellees.**

**No. 05–03–00381–CV.**

Court of Appeals of Texas, Dallas.

July 6, 2004.

---

Cecil Stephens, Big Springs, pro se.

Mike M. Tabor, J. Stephen Gibson, Shannon, Gracey, Ratliff & Miller L.L.P., Dallas, Gregory J. Sawko, Denton, and Michael E. Starr, Tyler, for Appellants.

Eugene Zemp DuBose, The Law Offices of Eugene Kemp DuBose, P.C., Dallas, for Appellees.

Before Justices WHITTINGTON and O'NEILL.[1]

## OPINION

Opinion by Justice WHITTINGTON.

Signal Peak Enterprises of Texas, Inc. and Cecil Stephens appeal the trial court's judgment awarding damages for breach of contract and fraud to Bettina Investments, Inc. and Oakhill, Incorporated after a jury trial. In fifteen issues, Signal Peak and Stephens urge reversal of the judgment because (i) the contract at issue was illegal, (ii) the trial judge abused his discretion in denying a motion to strike an amended pleading and denying a motion for continuance, (iii) the evidence is legally and factually insufficient to support the jury's findings, and (iv) the punitive damages award exceeded the applicable statutory cap. We reform the award of exemplary damages against Stephens and, as reformed, affirm the trial court's judgment.

### BACKGROUND

In 1999 and 2000, Bettina and Signal Peak entered into eight "Property Lease Agreements" under which Bettina would lease to Signal Peak approximately fifteen hundred square feet of space next to certain of Bettina's bingo halls. The leased space was "to be used primarily as a vending outlet and promotional center." Bettina designated Oakhill to receive rent from Signal Peak in "an amount equal to one-half (1/2) of the net proceeds" as agreed to by the parties. Oakhill was affiliated with

---

1. The Honorable Tom James, Retired, Court of Appeals, Fifth District of Texas at Dallas, was a member of the panel at the time this case was argued and submitted for decision. Due to his subsequent retirement from the Court, Justice James did not participate in the issuance of this opinion. *See* Tex.R.App. P. 41.1(a) & (b).

one of several charitable organizations who shared proceeds from the operations of Bettina's bingo halls. Bettina and Oakhill later terminated the leases and filed suit against Signal Peak and Stephens after Signal Peak allegedly refused to permit Bettina to conduct an audit of the income and expenses relating to the subject matter of the leases. A third defendant, Terry Wylie, was nonsuited without prejudice.

Following trial, the jury found (i) Signal Peak breached its lease contracts, (ii) appellants defrauded appellees, (iii) appellants acted with malice, and (iv) Stephens was responsible for Signal Peak's conduct. The jury awarded damages of $425,000 for Signal Peak's breach of contract, $100,000 for Signal Peak's fraud, $250,000 for Stephens's fraud, $100,000 exemplary damages against Signal Peak, $1,000,000 exemplary damages against Stephens, and $75,000 in attorneys' fees. This appeal ensued.

### ILLEGALITY OF CONTRACT

■ In their first issue, appellants claim the leases were contracts to engage in illegal gambling and were therefore unenforceable. Appellants raise this argument for the first time on appeal and concede they did not object in the trial court; nevertheless, they argue the trial court's error was fundamental and no objection was necessary. We disagree.

■ At trial, appellants took the position the leases were legal. They did not plead illegality as an affirmative defense to appellees' claims for breach of contract. *See* Tex.R. Civ. P. 94 (illegality must be pleaded as affirmative defense). Nor did they request the trial judge make any ruling regarding illegality of the leases. Because appellants failed to object in the trial court on the basis of the leases' illegality, absent fundamental error, they waived any complaint of error. *See* Tex.

R.App. P. 33.1 (as prerequisite to presenting complaint for appellate review, record must show complaint was made to trial court by timely request, objection, or motion).

■ Fundamental error exists "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982) (per curiam); *see also Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex.1993) (public interest was not directly and adversely affected by providing dictionary definition to jury; therefore no fundamental error occurred). Appellants argue the leases adversely affected the public interest because they violated the Texas Constitution's prohibition of gambling as well as various sections of the penal code.

■ If parties contract to undertake illegal activity, their contract is void and will not be enforced by a court. *Miller v. Long–Bell Lumber Co.,* 148 Tex. 160, 222 S.W.2d 244, 246 (Tex.1949). In *Miller,* the court explained, "The principle of law urged by the petitioner to the effect that courts will not lend their aid in enforcing illegal contracts is well recognized." *Miller,* 222 S.W.2d at 246 (citing *Heirs of Hunt v. Heirs of Robinson,* 1 Tex. 748, 759 (1847) for proposition that "[i]t is believed to be a rule of universal application that to undertake to do an act forbidden by the law of the place where it is to be done is an invalid agreement, and imposes no legal obligation.").

■ Where the illegality does not appear on the face of the contract, however, it will not be held illegal and thus void unless the facts showing its illegality are before the judge. *See Franklin v. Jack-*

*son,* 847 S.W.2d 306, 310 (Tex.App.-El Paso 1992, writ denied). A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner. *Franklin,* 847 S.W.2d at 310. When two constructions of a contract are possible, preference will be given to that which does not result in violation of law. *Franklin,* 847 S.W.2d at 309–10.

Here, there is no illegality on the face of the leases. The terms of the leases provide the lessor will lease property "to be used primarily as a vending outlet and promotional center." The lessee agrees to "use the premises ... for no other purposes than as a phone card and collectors card vending and promotional center." Further, the lessee agrees to "comply at all times with all rules, regulations, ordinances and laws of each and every government entity having jurisdiction over Lessee and Lessee's operation." Thus, on the face of the contract, the parties did not "undertake to do an act forbidden by the law of the place where it is to be done." *See Miller,* 222 S.W.2d at 246.

■ Moreover, facts showing illegality were not before the court. *See Franklin,* 847 S.W.2d at 310. While there is testimony about general types of machines used on the leased premises, the parties did not offer evidence in the trial court regarding whether the machines were "gambling devices" proscribed by the penal code. *See* TEX. PEN.CODE ANN. §§ 47.01, 47.02 (Vernon 2003). "The presumption being in favor of legality, the burden of proof is on the party asserting the illegality." *Franklin,* 847 S.W.2d at 310. Neither the trial judge nor the jury considered, or was asked to consider, the issue of whether the machines used on the leased premises were illegal gambling devices.

Because illegality does not appear on the face of the leases and facts showing illegality were not before the court, the leases were not void and the trial court's enforcement of them was not fundamental error. *See Franklin,* 847 S.W.2d at 310; *see also Wal–Mart Stores, Inc.,* 868 S.W.2d at 328. We overrule appellants' first issue.

AMENDMENT OF PLEADINGS AND CONTINUANCE

■ In their second issue, appellants challenge the trial judge's denial of their motion for continuance. Under this issue, appellants claim appellees' amended pleading, filed thirty-two days before trial, changed the "substantive parameters of the litigation," "constituted prejudicial surprise," and made meaningful discovery on the new claim impossible.

We review appellants' complaints regarding their motion to strike appellees' amended pleading and motion for continuance under an abuse of discretion standard. *See Clade v. Larsen,* 838 S.W.2d 277, 280 (Tex.App.-Dallas 1992, writ denied) (amended pleadings); *General Motors Corp. v. Gayle,* 951 S.W.2d 469, 476 (Tex.1997) (granting or denial of motion for continuance is within trial court's sound discretion). A trial judge abuses his discretion when he acts without reference to guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

Appellees filed their third amended petition on September 13, 2002. On October 7, 2002, appellants moved to strike the third amended petition and requested a continuance of the October 15, 2002 trial date based upon the new allegations. A civil master heard the motions on October 10, 2002, and denied them in an order dated October 16, 2002. This ruling was not appealed to the trial judge. On November 1, 2002, appellants moved for continuance of the Tuesday, November 5, 2002, trial date, citing their counsel's trial

setting in Wood County on November 4, but did not complain again of the amended petition. The case proceeded to trial on November 5, 2002. After the jury's verdict, appellants moved for new trial, alleging that their motion to strike appellees' third amended petition, or in the alternative to continue the trial date, should have been granted.

Because appellants did not appeal the civil master's ruling until after the trial, the trial judge was not given a timely opportunity to consider the motion to strike or in the alternative to grant a continuance. The trial judge did compare the second and third amended petitions when presented at trial with appellants' request to allow the testimony of a witness whose name had not been disclosed in discovery. The trial judge permitted the testimony. Appellants did not renew their motion to strike or request a continuance at that time.

■■■ The parties did not brief the issue whether error in an order of a civil master may be asserted on appeal when no appeal was made to the trial judge. Assuming such an appeal is permissible, we nevertheless find no error in the civil master's denial of the continuance and of the motion to strike the amended petition. Under rule 63 of the Texas Rules of Civil Procedure, parties may amend their pleadings by filing amendments "at such time as not to operate as a surprise to the opposite party." TEX.R. CIV. P. 63. A party's right to amend under rule 63 "is subject only to the opposing party's right to show surprise." *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex.1990). In their motion to strike the third amended petition, appellants argued appellees had added two additional claims for relief, specifically, for "income from the game rooms concealed by Defendants" and "concealed receipts from game rooms," and had re-

quested "new damages" of over $3 million. In the accompanying motion for continuance, appellants requested additional time for discovery relating to these claims. The second amended petition alleged causes of action for breach of contract and fraud. It also alleged a conspiracy to defraud and the use of Signal Peak as an alter ego of Stephens to defraud appellees. These causes of action did not change in the third amended petition; the new allegations relate to additional fraud by concealment.

Although appellants claimed surprise in their motions to strike and for continuance, referring to depositions, requests for disclosure, and a designation of witnesses, they do not point to any specific support in this material in the record before us. Because appellants have not presented evidence establishing their claim of surprise, we cannot conclude the civil master abused his discretion in denying the motions to strike and for continuance. *See Greenhalgh*, 787 S.W.2d at 939 (trial court has no discretion to refuse amendment unless opposing party presents evidence of surprise or prejudice or amendment asserts new cause of action or defense). We overrule appellants' second issue.

## LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE

Next, appellants challenge the legal and factual sufficiency of the evidence to support the jury's findings. Appellants claim there is no evidence, or alternatively, factually insufficient evidence to support the jury's findings regarding: (i) Signal Peak's breach of contract and appellees' damages from the breach (issues three, seven, and eight), (ii) Signal Peak's fraud and appellees' damages from fraud (issues four, nine, ten, eleven, and twelve), and (iii) Stephens's responsibility for the actions of Signal Peak (issues five and fifteen). Af-

ter reviewing the record, we disagree and overrule these issues.

When challenging the legal sufficiency of the evidence to support a finding on which they did not have the burden of proof at trial, appellants must demonstrate on appeal that no evidence exists to support the adverse finding. *Casino Magic Corp. v. King*, 43 S.W.3d 14, 19 (Tex.App.-Dallas 2001, pet. denied) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)). We will sustain a no-evidence challenge when (i) the record discloses a complete absence of evidence of a vital fact, (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (iii) the evidence offered to prove a vital fact is no more than a mere scintilla, or (iv) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003). We look to see whether any record evidence supports the challenged finding. *Casino Magic*, 43 S.W.3d at 19. Anything more than a scintilla of evidence is legally sufficient to support the jury's finding. *See Casino Magic*, 43 S.W.3d at 19.

In contrast, when appellants challenge the factual sufficiency of the evidence on an issue on which they did not have the burden of proof, appellants must demonstrate the evidence is insufficient to support the adverse finding. *Casino Magic*, 43 S.W.3d at 19. We consider, weigh, and examine all the evidence presented at trial. *Casino Magic*, 43 S.W.3d at 19 (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989)). We set aside a finding for factual insufficiency only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Casino Magic*, 43 S.W.3d at 19 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)); *Bellino v. Comm'n for Law-*

*yer Discipline*, 124 S.W.3d 380, 385 (Tex. App.-Dallas 2003, pet. denied).

██ The jury found Signal Peak failed to perform its contract with appellees. In their third, seventh, and eighth issues, appellants argue the evidence is legally and factually insufficient to support the jury's verdict because appellants had no duty under the leases to (i) keep complete and accurate records of the income and expenses of the game rooms, (ii) secure the cash on hand and prevent thefts, or (iii) buy telephone cards at the market price. Appellants argue that because the leases did not require these duties, their failure to perform them could not result in a breach of the leases.

Even assuming appellants' assertions on these three issues are correct, the record contains evidence establishing appellants' breach of other contractual obligations with appellees. Under the terms of the leases, Signal Peak was required to pay Oakhill an amount equal to one-half of the net proceeds from the game rooms operated on the leased premises. The record shows Signal Peak paid Oakhill approximately $426,000 under the leases' net proceeds clauses. Appellees introduced evidence that the successor lessee paid more than twice that amount for a comparable time period under similar circumstances and introduced expert testimony regarding the calculation and amount of damages. Stephens testified the $426,000 was much less than the game rooms should have been making and attributed the difference to theft. Although appellants claimed the successor lessee took over a going concern and thus had fewer expenses and start-up costs than appellants, appellees offered testimony to refute the contention that the successor lessee took over appellants' operations without a drop in business or revenues. Thus, the evidence showed Signal Peak was obligated to pay one-half of

the net proceeds from the game rooms operated on the leased premises, Signal Peak paid $426,000 to Oakhill, and the successor lessee paid twice that amount to appellees over a comparable time period and under comparable conditions. This evidence is legally and factually sufficient to establish appellants did not pay one-half the net proceeds from the game rooms to Oakhill as required by the leases, and the damages resulting from the breach were $425,000. We overrule appellants' third, seventh, and eighth issues.

■ Next, appellants challenge the sufficiency of the evidence to support the jury's findings that Signal Peak and Stephens defrauded appellees. In this case, the jury was instructed fraud could consist of either a material misrepresentation or failure to disclose a material fact. Appellees alleged appellants fraudulently understated the revenue produced by the gamerooms and offered evidence at trial of significant unexplained cash shortages, losses, and expenses. Appellees also offered evidence regarding their efforts to determine the cause of these shortages and losses. In the only audit permitted by appellants, cash shortages were made up by gameroom personnel supplying bundles of cash only after the shortages had been calculated. Appellees testified they could not verify the numbers supplied by appellants in their weekly reports because the underlying receipts and records were apparently discarded or destroyed. When a successor took over operations of the game rooms, the income inexplicably doubled.

Appellees also alleged fraud in the dispensing of phone cards. There was evidence a phone card was to be dispensed for each dollar put into machines in the game rooms. Signal Peak charged appellees eight cents for each card. The evidence shows the phone cards were not restocked in the machines and were not dispensed on each play, yet appellants continued to report and charge eight cents for each dollar played. The evidence also showed (i) the supplier of the phone cards was Prepaid Solutions, a company owned in large part by Stephens and his son, (ii) the ownership of the company was not previously disclosed to appellees, (iii) the eight percent deducted for the phone cards was initially kept in a Signal Peak bank account, and (iv) there were no available records showing Signal Peak's payments to Prepaid Solutions for the phone cards. In addition, the record contains evidence that two employees who attempted to audit or question discrepancies in the gamerooms were fired by Stephens or Wylie, a managerial employee.

■ The jury found appellees were damaged in the amount of $100,000 by Signal Peak's fraud and $250,000 by Stephens's fraud. Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). However, the injured party must do more than show that they suffered some lost profits. *Holt Atherton*, 835 S.W.2d at 84. The amount of the loss must be shown by competent evidence with reasonable certainty. *Holt Atherton*, 835 S.W.2d at 84. What constitutes reasonably certain evidence of lost profits is a fact-intensive determination. *Holt Atherton*, 835 S.W.2d at 84. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Holt Atherton*, 835 S.W.2d at 84.

Appellees presented lay and expert testimony to support their claimed damages, including the testimony of the successor lessee and an accounting expert. Both the breach of contract and the fraud damages

claimed were calculated on profits lost by appellees due to appellants' conduct. Appellees relied upon evidence of the successor's operation of the business, using objective data of comparable time periods, number of games, employees, and hours of operation.

Appellants claim appellees' method of calculating damages was disavowed by the court in *Edmunds v. Sanders,* 2 S.W.3d 697, 706 (Tex.App.-El Paso 1999, pet. denied). In *Edmunds,* the court of appeals found the evidence legally insufficient to support the jury's award of damages for lost profits. The plaintiff's evidence in that case, however was not based on a calculation of net profits, but rather on an expert's "yardstick" comparison measurement of comparable companies in comparable industries. *Edmunds,* 2 S.W.3d at 706. In contrast, appellees' expert relied on a projection of lost net profits based on projected revenues minus projected operating expenses for this particular business, a method approved by the *Edmunds* court. *See Edmunds,* 2 S.W.3d at 706. After reviewing the record in this case, we conclude the evidence is legally and factually sufficient to support the jury's findings of fraud and the resulting damages. Accordingly, we overrule appellants' fourth, ninth, tenth, eleventh, and twelfth issues.

## ALTER EGO

 The jury found Stephens responsible for the conduct of Signal Peak. In issues five and fifteen, appellants claim the evidence is legally and factually insufficient to support this finding. We disagree.

 The corporate fiction may be disregarded and individual liability imposed on a shareholder or affiliate of a corporation if the corporation is the "alter ego" of the individual. *See Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). Alter ego applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry,* 721 S.W.2d at 272. Alter ego is shown "from the total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry,* 721 S.W.2d at 272. Once alter ego is found to exist, the plaintiff must then show that the person on whom liability is sought to be imposed caused the corporation to be used for the purpose of perpetrating, and perpetrated an actual fraud on the obligee for the direct personal benefit of the person on whom liability is sought to be imposed. *See* TEX. BUS. CORP. ACT ANN. Art. 2.21.A (Vernon 2003); *Shaw v. Maddox Metal Works, Inc.,* 73 S.W.3d 472, 481 (Tex.App.-Dallas 2002, no pet.).

The record shows Stephens owned seventy percent of the stock of Signal Peak; Stephens's son owned the remaining thirty percent. The testimony at trial regarding Stephens's control of Signal Peak was conflicting. Stephens testified he stopped being actively involved in Signal Peak's activities ten years before trial, lived 300 miles away from the office, was employed on a consulting-only basis, and was not involved in day-to-day operations. During trial, however, he also showed detailed knowledge of Signal Peak's daily deposits into its bank account relating to the phone cards, the working relationship between Signal Peak and Prepaid Solutions, Prepaid Solutions' provision of phone boards used by Signal Peak and the price charged, the development of the business by Signal Peak so that its successor merely took over a thriving business, and the

reliability of the numbers relied upon by appellees to show their damages. His son testified Stephens flew out of town almost three times a week to check on Signal Peak's operations in other states. Stephens conceded he "ran things" at Signal Peak. Although he testified at trial that the money collected in appellees' bingo halls belonged to Signal Peak, he admitted this testimony conflicted with his deposition testimony that it was "my money, belongs to Cecil Don Stephens personally for them to operate out of." He further testified certain employees did not work for Signal Peak, in conflict with testimony of three other witnesses. He corrected appellees' attorney regarding the preparation and circulation of payroll sheets. He knew which of Signal Peak's bank accounts were used for expenses, although he also testified he had no knowledge of Signal Peak's bank accounts. He knew how the gameroom machines produced and printed weekly audit slips. Stephens testified Signal Peak was an operating company that did not own any assets but he could not explain why Signal Peak's balance sheet showed assets of $753,000. In addition, he testified he personally owned video games worth some $300,000 but could not explain whether those machines were also the ones shown as assets on Signal Peak's balance sheet. The jury was entitled to consider this evidence and reach its own conclusions regarding the weight to be given Stephens's testimony. After reviewing the entire record, including the evidence detailed here, we conclude the evidence is sufficient to support the jury's finding regarding Stephens's responsibility for the conduct of Signal Peak. We overrule issues five and fifteen.

## EXEMPLARY DAMAGES

In their sixth, thirteenth, and fourteenth issues, appellants challenge the jury's awards of exemplary damages. Appellants contend the award of $1,000,000 in exemplary damages against Stephens was excessive and exceeded the statutory cap, and that the evidence is legally and factually insufficient to support the exemplary damage award.

First, Stephens urges that the jury's $1,000,000 exemplary damage award against him was excessive and exceeded the statutory cap set forth in subsection 41.008(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (Vernon Supp.2004). This subsection provides:

(b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

(1) (A) two times the amount of economic damages; plus

(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b).

The jury's verdict did not include an award of noneconomic damages. The jury found economic damages of $100,000 for Signal Peak's fraud and $250,000 for Stephens's fraud, and also found both Signal Peak and Stephens acted with malice. The jury also found Stephens responsible for Signal Peak's actions. Considering the damage awards against both appellants for fraud, and assuming there is no applicable statutory exception, the maximum amount of punitive damages that could be awarded under subsection 41.008(b) is $700,000—two times the amount of the economic damages.

Appellees argue the award of punitive damages against Stephens was correct because Stephens's conduct falls into the exceptions set forth in subsection 41.008(c) of the civil practice and remedies code. Ap-

pellees contend the following portions of subsection 41.008(c) apply to allow the punitive damage award against Stephens:

(c) This section does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if ... the conduct was committed knowingly or intentionally: ...

(10) Section 32.45 (misapplication of fiduciary property or property of a financial institution); ...

(13) Chapter 31 (theft) the punishment level for which is a felony of the third degree or higher; ....

Appellees, however, did not assert these exemptions in the trial court or ask for any determination of their applicability. The jury did not make findings regarding the elements of these offenses or determine whether the conduct constituting the offenses was committed knowingly and intentionally. Appellees rely on *Myers v. Walker*, 61 S.W.3d 722, 731 (Tex.App.-Eastland 2001, pet. denied), a bench trial in which the claimant proved, by clear and convincing evidence, that he was fraudulently induced to enter into a settlement agreement. The court reasoned that the type of claim supported the award of tort damages, including exemplary damages. *Myers*, 61 S.W.3d at 731 (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998)). Further, the cap in section 41.008 did not apply because "Myers' fraudulent conduct fell within the exceptions enumerated in Section 41.008(c)" for misapplication of fiduciary property and securing execution of a document by deception. *Myers*, 61 S.W.3d at 732. In *Myers*, the court did not address what findings should be made before the statutory exceptions applied.

■ Under section 41.003, exemplary damages cannot be awarded without a finding, by clear and convincing evidence, of fraud, malice, or gross negligence. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp.2004). Based on such a finding, exemplary damages may be awarded, but may not exceed the statutory caps set forth in section 41.008(b). To allow the same fraud or malice finding to serve as an exception to the statutory caps under section 41.008(c) is inconsistent with the statutory scheme of limiting exemplary damages even when fraud or malice has been proven by clear and convincing evidence. We respectfully disagree with the *Myers* court and hold that a showing of fraud or malice by clear and convincing evidence does not as a matter of law establish one of the statutory exceptions in section 41.008(c).

■ Appellees also contend the exemplary damages award against Stephens was not in excess of the statutory cap because the economic damages awarded against Signal Peak should be considered in the calculation. They argue the fraud damages plus the $425,000 breach of contract damages constitutes $775,000 in economic damages,[2] so that the total exemplary damages cap would be $1,550,000, and the $1,000,000 award would be well within the cap. Section 41.003(a) of the Texas Civil Practice and Remedies Code provides that exemplary damages "may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negli-

---

**2.** Appellants do not argue the fraud and breach of contract damages constitute a double recovery.

gence." Here, appellees obtained favorable jury findings against both Stephens and Signal Peak on both fraud and malice. The jury was properly instructed to apply a "clear and convincing" evidence standard in determining the malice questions. The jury found Stephens responsible for Signal Peak's conduct. Therefore, we agree with appellees that the fraud damages awarded against Signal Peak may be included in the total economic damages used in calculating the exemplary damage award against Stephens under subsection 41.008(b).

▉▉▉▉ Appellees, however, do not cite authority for the proposition that damages from their breach of contract claim against Signal Peak may be included in the calculation of economic damages on which an award of exemplary damages is to be based. Exemplary damages are not recoverable in a breach of contract action, *see Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995) (breach of contract alone will not support punitive damages; existence of independent tort must be established), and it follows that economic damages arising from a breach of contract may not be used to increase the statutory cap under section 41.008.

We hold the cap set forth in section 41.008(b)(1)(A) applies, and the trial court's judgment should be reformed to reflect an award of exemplary damages against Stephens of twice the fraud damages awarded against Stephens and his alter ego Signal Peak, or $700,000.00. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.008(b)(1)(A) (Vernon Supp.2004). We sustain appellants' sixth issue.

▉▉▉▉ Appellants also challenge the legal and factual sufficiency of the evidence in support of the exemplary damage awards and complain the exemplary damage awards were excessive. We must review the award of exemplary damages with careful scrutiny to ensure it is supported by the evidence, and we may vacate the award or suggest a remittitur only if the award is "so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994). In order to determine if the exemplary damages awarded were reasonable, we consider factors such as the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. *See Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

After reviewing the record in this case, we conclude there is ample evidence to support the jury's awards. The evidence showed appellees were organized and conducted their operations in order to support charitable organizations. The evidence further showed appellants acted with malice in defrauding appellees of several hundred thousand dollars. Stephens's testimony and explanations of his conduct were at best inconsistent. He purported to know nothing about the business and disavowed any involvement in its operation and in the unexplained losses of cash, yet could testify to many details which demonstrated his extensive knowledge and involvement in the operation of Signal Peak. As noted above, this evidence established Stephens was responsible for the conduct of Signal Peak and used the corporation for the purpose of perpetuating an actual fraud on appellees primarily for his own benefit. The operation of the same business for a similar time period under similar conditions resulted in over twice the revenue reported by appellants. Thus, the evidence is sufficient to make the existence of the facts supporting the jury's awards of exemplary damages highly probable. *See*

*Foley,* 68 S.W.3d at 880. We overrule appellants' thirteenth and fourteenth issues.

We sustain appellants' sixth issue. We overrule all of appellants' remaining issues. We reform the trial court's judgment to reflect an award of exemplary damages against Cecil Stephens of $700,000. We affirm the trial court's judgment in all other respects.