# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 17, 2011

No.  10-50971

Lyle W. Cayce
Clerk

DANIEL J.  O'HARE, Individually and on Behalf of Nominal Parties TDF & Coal, Inc. and Vulcan Power Group, L.L.C.; MICHAEL R. STEWART, Individually and on Behalf of Nominal Parties TDF & Coal, Inc. and Vulcan Power Group, L.L.C.,

Plaintiffs - Appellees

v.

FORD F.  GRAHAM; KEVIN C.  DAVIS,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
USDC No. 5:04-CV-566

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This appeal arises from a dispute over a settlement agreement reached between the respective parties in another lawsuit.  O'Hare and Stewart sued here to enforce the agreement or to recover damages against Graham and Davis for fraudulently inducing them to enter the agreement.  A jury returned a verdict in favor of O'Hare and Stewart's fraud claims, which ironically, requires

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50971

Graham and Davis to pay about $6 million more to O'Hare and Stewart than if they simply had respected the initial settlement. For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND for entry of an amended judgment.

## I.

Daniel O'Hare, Michael Stewart, Ford Graham, and Kevin Davis at one time served together on Vulcan Power Group, L.L.C.'s Board of Managers. A management dispute prompted O'Hare and Stewart to file a lawsuit in 2004 against Graham, Davis, and various corporate entities with which Graham and Davis were affiliated. That lawsuit resulted in a settlement agreement entered in October 2004 in which O'Hare and Stewart agreed to accept $1 million each, payable over four years, in exchange for releasing their ownership interests in certain companies. O'Hare and Stewart were each to receive lump sum payments totaling $250,000 due by March 2005, and monthly payments totaling $200,000 per year for three years and $150,000 for the final year. The agreement further provided that O'Hare and Stewart would remain covered under the company's insurance plan until the sums due to each were fully paid; that O'Hare and Stewart were released from their personal guarantees on corporate debts; and that Davis personally guaranteed to collect $200,000 of the total $2 million owed. Several corporate entities ("the Corporate Obligors"), with Graham and Davis speaking on their behalf, promised to make payments in satisfaction of the settlement agreement.

By March 2005, O'Hare and Stewart had received only $19,000 each. After granting the Corporate Obligors time to cure, they sued on the agreement. O'Hare and Stewart later amended their complaint to add common law and statutory fraud claims against Graham and Davis, individually. The district court granted partial summary judgment on the breach of contract claim in March 2009, holding only that the agreement was enforceable. Before the

No. 10-50971

remaining contract issues could proceed to trial, the district court announced that, in the light of a bankruptcy filing that would delay trial on the contract claims, it would hold a separate trial on the fraud claims against Graham and Davis.

At trial, O'Hare and Stewart offered testimony that allowed the jury to determine that Graham and Davis had, among other things, agreed to the settlement even though they were contemplating ways to void the agreement in the future; created at least twelve new corporate subsidiaries for the purpose of avoiding the settlement; when given the opportunity to cure, repeatedly assured O'Hare and Stewart that the corporate entities were doing their best to pay; filed a complaint with the FBI against Stewart; had O'Hare and Stewart removed from the company healthcare plan; sued O'Hare and Stewart; and ordered that several corporate subsidiaries be put into bankruptcy in an effort to delay the proceedings on the breach of contract claim.

The jury returned a verdict of $981,000 in compensatory damages for each plaintiff and $6 million total in exemplary damages. At the close of the plaintiffs' evidence, and again after the adverse jury verdict was announced, Graham and Davis moved for judgment as a matter of law. Each time it was denied. Following the denial of the renewed motion and after the district court entered a judgment in accordance with the verdict, Graham and Davis requested a new trial. This motion was also denied. Graham and Davis appeal.

## II.

Graham and Davis argue that numerous errors committed by the district court require reversal. We consider each claimed error in turn.

## A.

Graham and Davis contend that the evidence at trial was insufficient to establish every element of common law and statutory fraud. Common law fraud consists of six elements:

3

No. 10-50971

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). "The elements of statutory fraud in the sale of stock are substantially the same, except that to recover actual damages, a plaintiff does not have to prove that the defendant knew a statement was false." *Perenco Nigeria, Ltd. v. Ashland, Inc.*, 242 F.3d 299, 306 (5th Cir. 2001) (interpreting TEX. BUS. & COM. CODE ANN. § 27.01). Graham and Davis specifically contend that the elements of false representation, fraudulent intent, and injury are lacking.

"We accord great deference to the jury's verdict when evaluating the sufficiency of the evidence, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the verdict." *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

1.

Graham and Davis argue that neither made any representation or promise, individually, in connection with the settlement agreement: when they spoke, they spoke on behalf of the Corporate Obligors, not individually; hence the first element of fraud is missing. This argument misconstrues the nature of agency. A corporate agent may not "direct or participate in tortious acts. A corporate agent who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent for the corporation." *Grierson v. Parker Energy Partners 1984-I*, 737 S.W.2d 375, 377 (Tex. App. 1987). "A corporation's [agent] is personally liable for tortious acts which he directs or participates in during his employment."

4

No. 10-50971

*Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). The jury found that the promises made in forming the settlement agreement were fraudulent and that Graham and Davis participated in and directed the making of those promises. That the promises were made by corporations is no shield for the agents who acted on the corporations' behalf; it certainly does not mean that no promise or representation was made at all. The evidence demonstrated that Graham and Davis falsely represented that the Corporate Obligors would fulfill the settlement. The evidence is sufficient to support the first element of fraud.

2.

Graham and Davis next contend that the evidence does not establish the existence of fraudulent intent at the time the settlement was reached, especially in the light of the partial payment of $19,000 made to O'Hare and Stewart. We are unpersuaded. Evidence adduced at trial fully supported an intent not to pay. A former co-worker of Graham and Davis testified that, shortly before entering the settlement agreement, Graham announced that he would create new corporate entities through which to channel money to prevent O'Hare and Stewart from receiving payment. After entering the settlement, Graham and Davis triggered an FBI probe of Stewart and claimed inability to afford the settlement while racking up legal bills to contest it. Although some of these events may have occurred after the settlement was entered, "[s]light circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) (internal marks omitted). We will not substitute our judgment for that of the jury, which apparently found the evidence of fraudulent intent more persuasive than the small payment O'Hare and Stewart received.

5

No.  10-50971

3.

Graham and Davis next contend that O'Hare and Stewart suffered no injury, as any financial loss they experienced was from a breach of the settlement, not from fraud in the inducement of that settlement.  To the extent that Graham and Davis argue that Texas law requires that O'Hare and Stewart suffer some injury distinct from their contract damages in order to recover for fraud, they are mistaken.  "Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with . . . well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement."  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).  This claimed error is without merit.

B.

Graham and Davis argue that the district court did not submit the elements of common law fraud to the jury, and therefore a jury verdict based on common law fraud cannot be sustained.  Specifically, they contend that the jury was not asked to find that Graham and Davis acted with knowledge that the promise made was false.  We find no merit in this argument.  The district court gave instructions for common law fraud and statutory fraud separately, and each set of instructions contains the proper elements.  The jury interrogatories included Interrogatory Number Seven, which addressed knowledge.  Interrogatory Number Seven asked, "Do you find by clear and convincing evidence that Ford Graham or Kevin Davis made the false promise to the Plaintiffs with actual awareness of the falsity thereof?"  Below that question, Graham and Davis's names were listed separately along with blank spaces on which the jury could answer the interrogatory.  The jury answered "Yes" as to

6

No. 10-50971

both Graham and Davis. Although Interrogatory Number Seven came after Interrogatories One through Four, which were clearly the interrogatories addressing the elements of fraud, the jury still answered Interrogatory Number Seven affirmatively. The jury, therefore, reached the issue whether Graham and Davis made a promise with knowledge of its falsity, even if they reached the issue in a later segment of the interrogatories. We hold that common law fraud was submitted to the jury.

## C.

During the charge conference, Graham and Davis requested that the district court enter instructions on comparative responsibility and ratification.[1] The court declined to do so, and Graham and Davis assign this as a point of error. "[O]ur review of [the district court's] charge to the jury and jury interrogatories is deferential. We will reverse a judgment only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Stine v. Marathon Oil Co.*, 976 F.2d 254, 259 (5th Cir. 1992) (internal citation and marks omitted).

## 1.

Under Texas law, juries should be asked to evaluate the comparative responsibility of "(1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party who has been designated under Section 33.004." TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a). Graham and Davis's position is that they were not the only defendants named in O'Hare and Stewart's complaint, and the jury should have been instructed to consider the responsibility of the defendants named in the pleadings who did not participate in this trial.

---

[1] Graham and Davis also sought an instruction on waiver. On appeal, they group ratification and waiver together. We will do the same.

7

No. 10-50971

The problem with Graham and Davis's argument is that Texas law "does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission." TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(b). The only trial evidence to which Graham and Davis point that supports the commission of fraud by other defendants was testimony by O'Hare on cross examination. Defense counsel listed off the other defendants named in the pleadings and asked O'Hare whether they, too, had defrauded him. He answered affirmatively. One witness's conclusory statements that he was defrauded, elicited in cross examination, hardly qualify as sufficient evidence on which to base a jury instruction. It would not have been proper to instruct the jury to weigh conduct unsupported by evidence.

2.

"'Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate.'" *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 678 (Tex. 2000) (citation omitted). Graham and Davis argue that even if the settlement was fraudulently induced, O'Hare and Stewart ratified the settlement by accepting partial payment and by stating, in their pleadings, that their fraud claim was an alternative claim in the event the settlement was unenforceable. Graham and Davis argue that the jury should have been so instructed. Graham and Davis point to no evidence, however, that O'Hare and Stewart knew all of the material facts pertaining to their fraud claim at the time they accepted partial payment of the settlement or filed their complaint. Suing to enforce the contract while pleading fraud as an alternative theory of recovery did not serve to ratify Graham and Davis's fraud. Neither is accepting partial payment, by itself, ratification of a fraudulent agreement. *Id.* at 679. Graham and Davis were not entitled to this instruction.

8

No.  10-50971

D.

Graham and Davis contend that the jury's exemplary damages award is erroneous in several respects: O'Hare and Stewart did not request exemplary damages in their complaint; exemplary damages cannot, as here, be assessed jointly and severally; and the amount of exemplary damages exceeds the statutory cap.

1.

Graham and Davis are mistaken that O'Hare and Stewart failed to request exemplary damages.  The prayer for relief in their Consolidated and Third Amended Complaint states that, "O'Hare and Stewart . . . seek . . . exemplary damages . . . ."  This prayer is not made in reference to any specific defendant. The fact that this prayer was made as an alternative to the prayer to enforce the settlement has no bearing on our review of the exemplary damages award.

2.

Graham and Davis are correct that exemplary damages should not have been assessed against them jointly.  "In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 41.006.  Although the jury verdict contravenes this statutory directive by assessing exemplary damages jointly, Graham and Davis invited the error.  Graham and Davis's proposed Interrogatory Number Eleven reads: "What sum of money, if any, paid now in cash, should be assessed against Defendants and awarded to Plaintiffs as exemplary damages, if any, for the conduct found in response to Interrogatory No. Ten?"  Below that question, O'Hare and Stewart's names, not Graham and Davis's, were listed separately along with blank spaces on which the jury could answer the interrogatory.  This proposed interrogatory would not have allowed jurors to allocate exemplary damages to specific defendants, but would have

9

instead left the jurors to split a joint assessment between two plaintiffs. Because their proposed interrogatory invited a joint assessment of exemplary damages, Graham and Davis cannot now complain that the interrogatory given to the jury did the same. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 270 n.9 (5th Cir. 1996). We will not disturb the verdict based on this invited error.

3.

Graham and Davis further point out that the exemplary damages award exceeds Texas's statutory cap. Indeed, Texas Civil Practice and Remedy Code § 41.008 provides, in pertinent part: "[e]xemplary damages awarded against a defendant may not exceed . . . two times the amount of economic damages." TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b). An exemplary damages award may, however, exceed the cap where the plaintiff seeks recovery for certain conduct described as a felony by the Texas Penal Code, including securing the execution of a document by deception. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c)(11); TEX. PENAL CODE ANN. § 32.46. The jury awarded a total of $1,962,000 in economic damages, so the exemplary award, if capped, should not have exceeded two times that, or $3,924,000.

Instead, the jury awarded $6 million in exemplary damages, but without making specific findings pertaining to any of the exceptions to the exemplary damages cap. The jury instructions and interrogatories did not prompt the jury to make findings on any one of the exceptions, and O'Hare and Stewart did not propose instructions or interrogatories that would have done so. When the jury returned its verdict, Graham and Davis moved twice to cap the damages in accordance with Texas law, but the district court denied these motions. The court reasoned that because Graham and Davis secured a document, in this case a settlement agreement, by deception, their conduct constituted a felony under the Texas Penal Code, which satisfied an exception to the cap and permitted the

No.  10-50971

$6 million award.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c)(11); TEX. PENAL CODE ANN. § 32.46.

We hold that the district court erred by deciding in a bench ruling without jury findings that Graham and Davis's conduct satisfied the exception to the damages cap.  To exceed the cap, the jury, the sole fact finder in this case, would need to have found that Graham and Davis (1) possessed an "intent to defraud or harm [a] person;" (2) acted "by deception;" (3) "cause[d] another to sign or execute;" (4) a "document affecting property or service or the pecuniary interest of [a] person."  TEX. PENAL CODE ANN. § 32.46(a)(1); *Madison v. Williamson*, 241 S.W.3d 145, 161 (Tex.  App. 2007) ("Before a court will apply the exception to the statutory damage caps . . . a plaintiff must obtain jury findings that the defendant violated one of the criminal code provisions listed in the statute . . . ."); *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 927 (Tex. App. 2004).  The jury also would have been required to find that Graham and Davis committed this conduct "knowingly or intentionally."  TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c).  Here, the jury answered interrogatories on the elements of fraud and the prerequisites for awarding exemplary damages, but answered no interrogatories on these additional considerations.[2]  Findings of fraud are not, per se, findings that permit exceeding the cap on exemplary damages.  *Marin v. IESI TX Corp.*, 317 S.W.3d 314, 331 (Tex. App. 2010) ("The finding of fraud here . . . does not conform with . . . the penal code sections . . . that allow[] the cap to be exceeded."); *Madison,* 241 S.W.3d at 161; *Signal Peak*, 138 S.W.3d at 927 ("We . . . hold that a showing of malice or fraud . . . does not

---

[2] An argument can be made that, through the interrogatories given, the jury implicitly reached every element necessary to exceed the cap.  Although the interrogatories come very close to many of the elements necessary to exceed the cap, we are not confident that they reached every element.  In particular, the jury was not asked to find that anyone signed or executed a document, nor was the jury asked to find that every element of securing a document by deception was committed knowingly or intentionally.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c); TEX. PENAL CODE ANN. § 32.46(a)(1).

11

as a matter of law establish one of the statutory exceptions in section 41.008(c).").

Without any jury findings to support uncapped exemplary damages, O'Hare and Stewart are not entitled to an uncapped award.  Neither are they entitled to a new trial on the exemplary damages issue, as they made no objection to the instructions and interrogatories given on exemplary damages. We hold that Texas's statutory cap on exemplary damages applies, and we instruct the district court to reduce the exemplary damages award to $3,924,000, in accordance with that cap.[3]

## E.

Lastly, Graham and Davis contend that the district court erred in entering judgment on the fraud claims without requiring O'Hare and Stewart to elect which cause of action—fraud or contract—they would like to serve as the basis of their recovery.  Graham and Davis's stated concern is the risk of double recovery for the same wrong.  We are unmoved by that risk in this case.  The authorities Graham and Davis cite involve alternative theories being tried before juries and an election of remedies occurring before entry of judgment.  Here, the fraud claims against Graham and Davis were tried separately, pursuant to Federal Rule of Civil Procedure 42(b) and judgment was entered on the fraud claims alone pursuant to Federal Rule of Civil Procedure 54(b).  The contract claims have not been tried before a jury.  The risk of double recovery that the election of remedies doctrine is meant to protect against does not fit in this

---

[3] We are aware that O'Hare and Stewart raised the exception to the exemplary damages cap in their Third Amended Complaint.  That does not excuse their failure to propose jury instructions or interrogatories bearing on the elements of one of the exceptions to the cap.

We are also aware of a split among Texas appellate courts concerning whether the exemplary damages cap is an affirmative defense.  *Compare THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 588 (Tex. App. 2010) *with Wackenhut Corr. Corp. v. de la Rosa*, 305 S.W.3d 594, 653-55 (Tex. App. 2009).  Given the disposition of this case, we have no reason to address that issue.

No. 10-50971

context. We find no reversible error in the procedural discretion exercised by the district court.

## III.

Here, a jury found that Graham and Davis fraudulently induced O'Hare and Stewart to enter a settlement agreement. Graham and Davis complain that the evidence of fraud was insufficient to support the jury's verdict, that the jury was not properly instructed, that the jury's award of exemplary damages was improper, and that the district court erred in entering judgment without an election of remedies.

We have rejected each of these arguments, except one. Because the jury's findings do not support an uncapped award of exemplary damages, we reverse the judgment as to the award of exemplary damages, and remand for the district court to amend the judgment reducing the exemplary damages award to $3,924,000. Otherwise, we affirm the judgment. The district court's judgment is

AFFIRMED in part and REVERSED in part, and the case is REMANDED for entry of an amended judgment.