H. Jack OAKES d/b/a Jack Oakes & Associates, Appellant,

v.

GUARANTEE INSURANCE COMPANY, Appellee.

No. 5212.

Court of Civil Appeals of Texas, Eastland.

Nov. 16, 1978.

Rehearing Denied Dec. 7, 1978.

---

H. C. McCracken, Jr., McCracken, Shields & Taylor, Carrollton, for appellant.

John R. Henderson and Robert W. Coleman, Meyers, Miller & Middleton, Dallas, for appellee.

BROWN, Justice.

Guarantee Insurance Company sought recovery of premiums due from its agent, H. Jack Oakes d/b/a Jack Oakes and Associates. Based on jury findings that Oakes failed to remit $6,600 of premiums, judgment was entered for Guarantee in the amount of $7,600 which includes $1,000 stipulated as reasonable attorney's fees. Oakes appeals. We affirm.

The thrust of Oakes' position is that the arrangement between the parties is illegal and their contract unenforceable under Articles 21.01 and 21.02 of the Texas Insurance Code. Further, Oakes contends that the evidence would only support a judgment of $2,673.

Only two issues were submitted to the jury:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that H. JACK OAKES, d/b/a JACK OAKES & ASSOCIATES, failed to remit to GUARANTEE INSURANCE COMPANY premiums, less commissions, on insurance policies issued by GUARANTEE INSURANCE COMPANY at the instance of H. JACK OAKES?

Answer "We do" or "We do not".

ANSWER: We do

IF YOU HAVE ANSWERED THE FOREGOING SPECIAL ISSUE NO. 1 "WE DO", THEN ANSWER THE FOLLOWING SPECIAL ISSUE NO. 2. OTHERWISE, DO NOT ANSWER SPECIAL ISSUE NO. 2.

SPECIAL ISSUE NO. 2

What sum of money premiums, less commissions, has H. JACK OAKES, d/b/a JACK OAKES & ASSOCIATES failed to pay to GUARANTEE INSURANCE COMPANY?

Answer in dollars, if any, and cents, if any, as you find.

ANSWER: $6,600

These issues were submitted without objection and there was no request for additional issues.

Oakes was a licensed insurance agent in the state. He had approximately 82 policies of liability insurance, issued by Aetna Casualty and Surety Insurance Company, on drivers who drove for a company known as C & H Transportation Company. When Aetna decided to withdraw its coverage on the drivers, Oakes contacted Guarantee requesting it to appoint him as an agent and accept the liability coverage for the drivers. On September 13, 1974, Oakes and Guarantee entered into a local recording agent's agreement. Under the terms of the agreement, Oakes was entitled to a fifteen percent commission on any insurance placed with Guarantee. He was responsible for collecting the premiums and remitting them to Guarantee less his commission. The cov-

erage afforded by the Guarantee policies went into effect October 1, 1974, and Guarantee in this case sued for premiums under the policies.

At the time the agreement was signed, Oakes was under investigation by the state insurance board due to technical violations which also involved Aetna. The investigation resulted in Oakes having his certificate of authority suspended from November 11, 1974, until February, 1975. Oakes did not inform Guarantee of either the investigation or of the suspension of his license until a few days after November 11, 1974. He contends that because the agency agreement had not been approved by the insurance commission, it was null, void and of no effect and unenforceable by either party. In support of his position, Oakes cites cases which stand for the proposition that an unlicensed agent may not recover his earned commissions.

It is uncontroverted that Oakes was not appointed by the State Board of Insurance to represent Guarantee as an agent as required by Article 21.01, Texas Insurance Code, Tex.Rev.Civ.Stat.Ann., which reads:

It shall not be lawful for any person to act within this State, as agent or otherwise, in soliciting or receiving applications for insurance of any kind whatever, or in any manner to aid in the transaction of the business of any insurance company incorporated in this State, or out of it, without first procuring a certificate of authority from the Board.

The court in *Perkins v. Lambert*, 325 S.W.2d 436 (Tex.Civ.App.—Austin 1959, writ dism'd) held void and unenforceable a contract between a licensed insurance salesman for Southland Life Insurance Company and local agency manager for Fidelity Union Life Insurance Company whereby Lambert was to receive a commission for causing a holder of a term policy in Fidelity to convert it into permanent insurance for the reason that Lambert had not complied with Article 21.01 in that he had not received authority from the State Board of Insurance to represent Fidelity.

The court in *Armstrong v. Tidelands Life Insurance Company*, 466 S.W.2d 407 (Tex. Civ.App.—Corpus Christi 1971, no writ) wherein an agent sought to recover commissions said:

It is uncontroverted that although Armstrong was licensed generally as a life insurance agent in Texas during the existence of his contract with Tidelands, he was not appointed by the State Board of Insurance to represent Tidelands as an insurance agent. The acts which Armstrong alleges he performed and for which compensation is sought are those specifically prohibited by Article 572 of the Texas Penal Code and Article 21.01 of the Texas Insurance Code unless a Certificate of Authority is first procured from the Insurance Board. The damages claimed by Armstrong are based upon commissions he allegedly earned in reliance on the asserted representation that Tidelands would procure the Certificate of Authority.

The court held:

Article 21.01 of the Texas Insurance Code imposes the obligation to procure a Certificate of Authority from the Board of Insurance upon the person purporting to act as agent. . . .

and the court further stated:

It thus appears that Armstrong, as a matter of law, could not recover against Tidelands on the pleadings submitted to the court on the motion for summary judgment for the reason that (1) the acts for which he claims compensation were illegal without his first having procured the Certificate of Authority from the Board of Insurance as required by Article 21.01, Texas Insurance Code, and Article 572 of the Texas Penal Code and (2) because, as a matter of law, Armstrong cannot rely on any alleged misrepresentation by Tidelands to procure the license when Article 21.01 of the Texas Insurance Code and Article 572 of the Texas Penal Code impose the obligation on Armstrong to procure the Certificate of Authority prior to undertaking the services for which he now claims compensation.

The principle of law urged by Oakes that courts will not lend their aid in enforcing illegal contracts is well recognized. The court in *Miller v. Long-Bell Lumber Co.*, 148 Tex. 160, 222 S.W.2d 244 (1949) said:

As said in the early case of *Heirs of Hunt v. Heirs of Robinson*, 1846, 1 Tex. 748, 759: "It is believed to be a rule of universal application that to undertake to do an act forbidden by the law of the place where it is to be done is an invalid agreement, and imposes no legal obligation." The law in this respect has not varied in Texas down to the present, with some distinctions and refinements, of course, in its application to varying factual situations. For example, see *American Nat. Ins. Co. v. Tabor*, 111 Tex. 155, 230 S.W. 397. . . .

■ The rule against the enforcement of illegal contracts is subject to an exception as stated by the court in *Graham v. Dean*, 144 Tex. 61, 188 S.W.2d 372 (1945):

The rule that a court will not entertain a suit growing out of an illegal transaction is not always applicable where the parties are not in pari delicto. 17 C.J.S. Contracts § 274, p. 660; 12 Am.Jur. 734; 10 Tex.Jur. 239; *American National Insurance Co. v. Tabor*, 111 Tex. 155, 230 S.W. 397. This is especially true where the illegality of the transaction depended on the existence of peculiar facts which were known to the defendant but unknown to plaintiff, and plaintiff had no intention of violating the law. 17 C.J.S. Contracts § 291, p. 679; 13 C.J. 517; 12 Am.Jur. 648; 10 Tex.Jur. 195. In 17 C.J.S. Contracts p. 680, § 292, it is said:

"Thus, where a person sues for services rendered another in an occupation which is illegal, unless the employer is duly licensed to carry it on, which he is not, such person may recover unless he knew that the employer had no license, for while he is bound to know that the employer must have a license to make the business legal, his mistake as to his having such license is a mistake of fact and not of law."

■ We must resolve whether Oakes and Guarantee are in pari delicto. Article 21.01 imposes the obligation to procure a license upon the person to act as agent. *Armstrong v. Tidelands Life Insurance Company*, supra. Article 21.14(24), the penalty provision of Article 21.14, imposes a penalty on a person, firm or partnership who acts as a local recording agent before he has in force a license. There are no penalties directed to the company where the agent is unlicensed.

The court in *American Nat. Ins. Co. v. Tabor*, 111 Tex. 155, 230 S.W. 397 (1921) said:

We sanction the declaration of Judge Selden, quoted with approval in a later opinion of the New York Court of Appeals, that—

"It is safe to assume that whenever the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as par delictum." *Tracy v. Talmage*, 14 N.Y. 162, 67 Am.Dec. 145; *Irwin v. Curie*, 171 N.Y. 409, 64 N.E. 161, 58 L.R.A. 832.

It would not be in accord with either the public policy declared by the act wherein the statute is found or the ends of justice to permit insurance companies to issue discriminatory policies of life insurance and collect and retain the premiums thereon and to then refuse payment after the death of the insured.

The rule is established that a court of equity will not withhold relief where it is necessary in the interest of justice and of sound public policy to enforce a contract which is inhibited by statute, but is not declared void and is not otherwise open to attack, provided the parties are not in pari delicto, and he who is least culpable seeks relief. 1 Pomeroy's Equity Jurisprudence (3d Ed.) § 403.

It would not be in the interest of justice to permit a recording agent to retain premiums due an insurance company for policies it had issued merely because the agent failed to obtain his certificate of authority.

We hold the parties are not in pari delicto and overrule Oakes' first point of error.

Oakes contends there is no evidence, or alternatively, insufficient evidence to support the jury's answer of $6,600.

In considering the no evidence point, we apply the rule as stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974):

> When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970); *Langlotz v. Citizens Fidelity Insurance Company*, 505 S.W.2d 249 (Tex.1974).
>
> . . .

Courtier, senior vice-president of Guarantee, testified that the total net premium due on the policies, after Oakes deducted his fifteen percent commission, was $20,472.25. He testified that only $8,000 was received by Guarantee from Oakes. This statement was acknowledged by Oakes.

We hold that there is some evidence of probative force to support the jury finding. We have considered the entire record and hold such finding is not factually insufficient. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

We have considered and overrule all points of error. The judgment is affirmed.