**Affirmed and Remanded and Opinion Filed April 12, 2022**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00206-CV

**H. JONATHAN COOKE, INDIVIDUALLY AND ON BEHALF OF ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP. INC.; ESCROW PARTNERS AUSTIN, L.P.; ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.; ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC,**
**Appellants/Cross-Appellees**
**V.**
**ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; AND LEBLANC, PATTEN & KARLSENG LAW FIRM, P.C., Appellees/Cross-Appellants**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-06-02783-L**

## MEMORANDUM OPINION ON REMAND

Before Justices Schenck and Pedersen, III[1]
Opinion by Justice Pedersen, III

---

[1] Justice Ada Brown was a member of the original panel in this case, but due to her appointment to the federal bench, she did not participate in issuing this opinion on remand.

This is a permissive interlocutory appeal of the trial court's February 6, 2018 Second Amended Order Granting Defendants' Motion for Summary Judgment on Defendants' Illegality and Business Judgment Rule Defenses and Amended Order on Defendants' Plea to the Jurisdiction and Traditional Motion for Partial Summary Judgment Related to the Business Entities' Claims (the Order). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d). The trial court granted the parties' agreed motion for this appeal, concluding that the Order "involves controlling questions of law about which there is a substantial ground for difference of opinion," *id.* § 51.014(d)(1), and that an immediate interlocutory appeal "may materially advance the ultimate termination of the litigation," *id.* § 51.014(d)(2). Those controlling questions take the form of four issues. Appellants[2] contend the trial court erroneously granted summary judgment in favor of the cross-appellants on two affirmative defenses: illegality and the business judgment rule. Cross-appellants[3] argue the trial court erroneously denied their plea to the jurisdiction and their summary judgment motion on a third affirmative defense, limitations.

---

[2] The appellants/cross-appellees include: Escrow Partners Dallas, L.P.; Escrow Partners Dallas, GP, Inc.; Escrow Partners Houston, L.P.; Escrow Partners Houston, GP, Inc.; Escrow Partners Austin, L.P.; Escrow Partners Austin, GP, Inc.; Escrow Partners San Antonio, L.P.; Escrow Partners San Antonio, GP, Inc.; Title Partners, L.L.P.; North American Management, L.L.P.; TJ Partners I, LLC; and TJ Partners II, LLC (the Business Entities) and H. Jonathan Cooke, who appeals individually and on behalf of the Business Entities. We will refer to Cooke and the Business Entities collectively as the appellants.

[3] The appellees/cross-appellants include: Robert C. Karlseng; Karlseng Law Firm, P.C.; Ashley Brigham Patten; Patten & Karlseng Law Firm, P.C.; Jacques Yves LeBlanc; and LeBlanc, Patten & Karlseng Law Firm, P.C. We will refer to these parties as the cross-appellants.

In our initial opinion on these issues, we reversed the trial court's Order in part, dismissed Cooke's individual claims for lack of jurisdiction, and dismissed his derivative claims, concluding that they were barred by limitations.[4] *Cooke v. Karlseng*, 617 S.W.3d 570, 580 (Tex. App.—Dallas 2019). While an appeal from our judgment was pending, the Texas Supreme Court decided *Pike v. Texas EMC Management, LLC*, 610 S.W.3d 763 (Tex. 2020). The supreme court concluded that our original opinion should be reconsidered in light of that opinion; it reversed and remanded the case for further proceedings. *Cooke v. Karlseng*, 615 S.W.3d 911, 912 (Tex. 2021).

On remand, we conclude that the trial court correctly denied cross-appellants' plea to the jurisdiction and their motion for summary judgment on limitations. We likewise conclude that the trial court correctly granted cross-appellants' motion for summary judgment on the affirmative defense of illegality. Accordingly, we affirm the trial court's Order on those three issues and—without reaching the fourth issue—render judgment that appellants take nothing on their claims dismissed by the Order.

---

[4] We did not reach the defensive issues of illegality and the business judgment rule in our original opinion.

# BACKGROUND[5]

In 1999, Cooke and Karlseng went into business together to provide title closing services to lenders and real estate companies. Cooke and Karlseng formed a partnership, Title Partners, L.L.P, each with a fifty-percent ownership interest, to supervise the day-to-day management of the business. Karlseng is a licensed attorney and became a licensed escrow agent; Cooke, who is not an attorney, handled marketing duties. Over the next five years, Cooke and Karlseng expanded their business operations to several Texas cities and formed other partnerships with attorneys Ashley Brigham Patten and Jacques Yves LeBlanc. The partners split profits according to the terms of the partnership agreements.

In 2004 and 2005, the Texas Department of Insurance (the TDI) conducted an investigation of the partnerships to determine whether a licensed attorney was supervising the work of certain employees who were closing real estate transactions. Although cross-appellants' counsel advised that the business relationship was legal, he also suggested that switching to a law firm structure could expedite a resolution with the TDI. Thereafter, Karlseng, Patten, and LeBlanc created the defendant law firms and transferred partnership assets and business to the new firms without paying Cooke or observing the requirements of the partnership agreements when

---

[5] This case has been appealed multiple times. As we did in our most recent opinion, we adopt the relevant factual background statement from the first appeal in 2009, *Karlseng v. Cooke*, 286 S.W.3d 51, 53–54 (Tex. App.—Dallas 2009, no pet.), and we add facts concerning subsequent events as necessary to resolve this appeal.

transferring these assets. The parties disputed whether Cooke was consulted on this change. The parties unsuccessfully attempted to negotiate a settlement to compensate Cooke either through a buyout or employment/consulting contract. Cooke claimed he was then fired, but cross-appellants asserted he quit.

In March 2006, Cooke filed a lawsuit alleging cross-appellants tortiously transferred partnership assets to new professional corporations, owned solely by the individual cross-appellants, and they falsely told Cooke that the partnerships needed to shut down due to certain state regulations. The partnership agreements provided for arbitration, and cross-appellants filed a motion to compel arbitration. The trial court granted the motion and ordered the parties to arbitration.

A contested arbitration hearing was held in December 2007. The arbitrator ruled in Cooke's favor and awarded him more than $22 million. The trial court affirmed the arbitration order, but this Court vacated the award and remanded the cases for further proceedings. *Karlseng v. Cooke*, 346 S.W.3d 85, 100 (Tex. App.—Dallas 2011, no pet.).

Over subsequent years, the case has been litigated in depth. Claims and defenses have been added, and a number of legal theories have been raised in response. This permissive appeal turns on four of those theories.

(1) Cross-appellants moved for summary judgment contending that Cooke's claims were barred because the partnership agreements structuring the operations of the Business Entities called for Cooke to share in the profits of the enterprise.

According to title insurance law and regulations, sharing profits with a party not licensed as an escrow agent or an attorney is illegal. The trial court granted the motion. In their first issue, appellants challenge that ruling.

(2) Cross-appellants also moved for summary judgment arguing that Cooke's claims were barred because the attorney-partners' decision to move the illegal operation to one operating legally within law firms was protected by the Business Judgment Rule. The trial court granted this motion as well. Appellants' second issue challenges that ruling.

(3) Cross-appellants filed special exceptions and a plea to the jurisdiction arguing that all claims within Cooke's Second Amended Petition, which were pleaded as his own individual claims, belonged to the Business Entities. Thus, they contended, Cooke lacked standing to bring the claims. The trial court granted the special exceptions and allowed Cooke to replead. His Third Amended Petition added the twelve Business Entities as plaintiffs and—for each of Cooke's pleaded claims—stated that the claim was now being brought individually and derivatively on behalf of the Business Entities. Cross-appellants filed a second plea to the jurisdiction, again arguing that Cooke lacked standing to pursue his individual claims. The trial court denied this second plea, and that ruling underlies cross-appellants' first issue.

(4) Cross-appellants moved for summary judgment arguing that all of the Business Entities' claims were barred by their respective statutes of limitation.[6] The trial court denied this motion; cross-appellants' second issue challenges that ruling.

After some time, the parties agreed to request this permissive appeal, and the trial court granted their motion. Following jurisdictional briefing, this Court concluded that it had jurisdiction to hear the appeal.

## THE CROSS-APPEAL

We begin with cross-appellants' issues, (a) acknowledging the supreme court's conclusion on the standing issue, and (b) determining—in light of that conclusion—which parties survive the summary judgment motion on limitations and remain properly before the trial court.

### Plea to the Jurisdiction on Standing

Cross-appellants' plea to the jurisdiction was directed at the individual claims brought by Cooke in his 2006 original petition and expanded in his amended petitions. The plea alleged that Cooke's individual claims pleaded only an injury to the Business Entities and thus did not belong to him individually. As a result, cross-appellants argued, Cooke lacked standing to pursue those claims.

The supreme court's opinion in *Pike*, however, held that "a partner or other stakeholder in a business organization has constitutional standing to sue for an

---

[6] The limitations motion was titled Motion for Summary Judgment on the Business Entities' Claims.

alleged loss in the value of its interest in the organization." *Pike*, 610 S.W.3d at 778. The court acknowledged the existence of "statutory provisions that define and limit a stakeholder's ability to recover certain measures of damages, which protect the organization's status as a separate and independent entity." *Id.* It clarified, however, that those statutory provisions relate to the merits of the partner's claim, not to the subject-matter jurisdiction of the court. *Id.* Thus, a court possesses jurisdiction to render a take-nothing judgment—rather than to dismiss the claim—if the partner fails to meet statutory requirements. *See id.*

Relying on this analysis from *Pike*, the supreme court concluded that Cooke did not lack constitutional standing to bring the claims challenged by cross-appellants' plea. *Cooke*, 615 S.W.3d at 913; *see also Lipshy v. Burk*, No. 05-19-00493-CV, 2020 WL 6696368, at *3 (Tex. App.—Dallas Nov. 12, 2020, no pet.) (mem. op.) (relying on *Pike* and concluding limited partners have jurisdictional standing to assert claim for reduction in value of their respective partnership interests). Thus, the trial court correctly denied cross-appellants' plea to the jurisdiction, and their first issue must be overruled.

**Summary Judgment on Limitations**

Cross-appellants contend in their second issue that the trial court erroneously denied their summary judgment motion on limitations for Cooke's derivative claims filed in 2014. Cooke argues that these claims relate back to his timely filed individual claims. In our original opinion, we concluded that—because Cooke lacked standing

–8–

to bring the claims based solely on injuries to the Business Entities—the challenged claims could not relate back, because the doctrine of relation back cannot create jurisdiction where none existed. *Goss v. City of Houston*, 391 S.W.3d 168, 175 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Having concluded now that Cooke did in fact have standing to bring those claims, we look at the relation-back argument through a different lens.

After concluding in *Pike* that a partner in a business organization has constitutional standing to sue for an alleged loss in the value of his interest in the organization, *Pike*, 610 S.W.3d at 778, the supreme court went on to clarify that whether a claim brought by a partner actually belongs to him or to the partnership is an issue of capacity "because it is a challenge to the partner's legal authority to bring the suit." *Id.* at 779 (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005)). This distinction—between the concepts of standing and capacity—is dispositive of the limitations issue in this case.

The relation-back statute provides:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the . . . facts or grounds of liability . . . is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

CIV. PRAC. & REM. § 16.068. It is undisputed that Cooke's original petition, asserting his claims individually, was timely filed. Thus, his amendment will relate back and will not be subject to the bar of limitations unless it "is wholly based on a new,

distinct, or different transaction or occurrence." *Id.* Cooke's amendment added no new facts or grounds of liability for the defendants. Indeed the only change in his pleading was the addition of a footnote following the statement of each of his claims saying that "Mr. Cooke asserts this claim both individually and derivatively on behalf of each of the entities named in the caption."[7]

The change in the pleading, thus, was solely a matter of Cooke's capacity as plaintiff. *Lovato* instructs that errors in capacity may be corrected and relate back to timely filed petitions. 171 S.W.3d at 852–53. We conclude that the claims Cooke added in 2014 do relate back to his timely filed individual claims and thus are not barred by limitations.

The trial court did not err in denying cross-appellants' motion for summary judgment on limitations. We overrule cross-appellants' second issue.

## THE APPEAL

In two issues, appellants challenge the trial court's grant of summary judgment in favor of cross-appellants on the affirmative defenses of illegality and the business judgment rule. We apply well-known standards in our review of

---

[7] The footnotes went on:

Each entity is a closely held corporation or partnership. For the partnerships, no demand was made on any of the general partners because (a) each general partner is a closely held corporation and (b) because demand on the general partners would be futile because both (1) the wrongdoers to be acted against are in control of the GP, and (2) numerous discussions and years of litigation have shown that the individuals controlling the GP are unwilling to compensate Mr. Cooke. Because these entities are closely held, the Court should treat the action as a direct action.

–10–

traditional summary judgment motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these standards, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

### Illegality

If a contract requires a party to do a thing that cannot be done without violating the law, then the contract violates public policy and is void. *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 483 (Tex. 2016). Illegality is an affirmative defense. *Id.* at 485. It is also a legal question, which we review de novo. *Id.*

Cross-appellants' traditional summary judgment motion argued that the partnership agreements between the attorneys and Cooke were illegal because the Business Entities, as structured, could not legally engage in the business of title insurance as attorney fee offices.[8] The trial court agreed and granted the motion. The

---

[8] A "fee office" is operated by an attorney who is a licensed escrow agent and who closes transactions in a title company's name.

Order provided that Cooke would take nothing on his claims that, either individually or derivatively, sought to recover damages "based on the ongoing operation of any of the Business Entities."[9]

In this Court, appellants argue that the agreements establishing the Business Entities are not facially illegal because they do not specifically provide for an illegal mode of performance. Appellants contend that "[a]ll that would be required for the partnerships to be in compliance is for the participants to be appropriately licensed by the TDI." It is true that a contract that could have been performed in a legal manner will not be declared void because it *may* have been performed in an illegal manner. *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 920–21 (Tex. App.—Dallas 2004, pet. struck). If the contract does not appear illegal on its face, then we will not hold it to be illegal and void "unless the facts showing its illegality are before the judge." *Id.* In this case, however, the facts "before the judge" established that the partnership agreements could not have been performed legally because Cooke was not "appropriately licensed" by the TDI[10] and because he was Karlseng's partner, not a bona fide employee in the title insurance business.

The Texas Insurance Code directs that:

---

[9] The Order permitted Cooke to pursue only claims regarding recovery of assets of the Business Entities.

[10] It is undisputed that Cooke was not a licensed attorney, a licensed escrow agent, or a licensed title agent. Likewise, it is undisputed that the Business Entities were not licensed title insurance agencies.

> A commission, rebate, discount, portion of a title insurance premium, or other thing of value may not be directly or indirectly paid, allowed, or permitted by a person engaged in the business of title insurance or received or accepted by a person for engaging in the business of title insurance or for soliciting or referring title insurance business.

TEX. INS. CODE ANN. § 2502.051. Cooke acknowledges that his role in the enterprise was marketing the partners' title insurance business, which amounts to "soliciting or referring title business." *See id.* The code does make certain exceptions to this prohibition against splitting title insurance premiums, including "payment of bona fide compensation to a bona fide employee principally employed by a title insurance company, title insurance agent, or direct operation." *Id.* § 2502.053(3).

Cooke argues that nothing would prohibit one of the Business Entity's owners—i.e., Cooke—from operating as a bona fide employee of Karlseng's fee office. Cooke does not disclaim his status as the attorneys' partner; his claims in this lawsuit are rooted directly in that status. Thus, to prevail, he must argue that he could be both a partner, entitled to share profits with the attorneys, and an employee, hired and paid only for work performed under the attorneys' control and supervision. We disagree that such a duality can exist in the context of the highly regulated insurance industry. No authority cited by Cooke supports such an interpretation of the insurance code provisions before us. We are bound to apply these statutes according to their plain language, and that plain language prohibits splitting title insurance premiums with an unlicensed individual or entity who is marketing the business. *Id.* § 2502.051.

Our conclusion is supported by the TDI's own findings and conclusions involving the business relationships at issue here. In 2005, the TDI undertook its investigation of Karlseng's business operations, specifically those involving Escrow Partners Dallas GP, Inc. and Title Partners, L.L.P. On January 30, 2006, the Commissioner signed his Consent Order identifying the results of the TDI's investigation. Among the TDI's allegations that were investigated was whether Karlseng "paid title insurance premiums to improperly licensed persons [and] operated as a title fee attorney through individuals who were not his actual bona fide employees." The Consent Order found, *inter alia*, that Karlseng and Cooke shared ownership of title insurance businesses and that Cooke was neither licensed nor an attorney. Among the TDI's conclusions of law was the following:

> Robert Karlseng, Escrow Partners Dallas GP, Inc., and Title Partners, L.L.P., directly or indirectly, paid or permitted payment of a portion of a title insurance premium or any thing of value to a person for engaging in the business of title insurance or for soliciting or referring title insurance business, as contemplated by TEX. INS. CODE ANN. § 2502.051 . . .

Based on these findings and conclusions, Karlseng was ordered to pay an administrative penalty of $100,000. The Texas Supreme Court has "long held that an agency's interpretation of a statute it is charged with enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language." *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). We conclude that the TDI's determination that the fee splitting at issue in this appeal was sanctionable as

a violation of the insurance code was both reasonable and in accordance with the statutory language. Its determination, therefore, is due some deference. *See id.*

Based on the unambiguous language of the Texas Insurance Code, and giving deference to the TDI's interpretation of that code, we conclude that the partnership agreements between the attorneys and Cooke were illegal because the Business Entities, as structured, could not legally engage in the business of title insurance as attorney fee offices. Barring application of one of the defensive theories urged by Cooke, and discussed below, the trial court did not err in granting cross-appellants' motion for summary judgment on illegality.

## Exceptions to Unenforceability

Appellants argue alternatively that even if the partnership agreements did not comply with Texas insurance law, they could still be enforced based on either of two exceptions to their unenforceability. Appellants argue that the parties were not *in pari delicto* and that enforcement of the agreements is actually supported by the public policy of the State of Texas.

### *In Pari Delicto*

Parties are said to be *in pari delicto*—literally, "in equal fault"—when both are blameworthy in an inappropriate transaction. *See Small v. Parker Healthcare Mgmt. Org., Inc.*, No. 05-11-01471-CV, 2013 WL 5827822, at *4 (Tex. App.—Dallas Oct. 29, 2013, no pet.) (mem. op.). When one party to an illegal contract is

not culpable, i.e., not *in pari delicto*, courts may allow that party to enforce the agreement and to recover despite the illegal nature of the contract. *Id.*

Appellants contend that "Cooke was a non-lawyer relying on the representations of his lawyer-partners." They argue that Cooke was never "on the same footing as [cross-appellants] because of their superior legal knowledge" and that Cooke had to trust that cross-appellants "were telling him the truth at every turn." Appellants argue that Karlseng kept Cooke away from the TDI investigation and that Cooke "suffered a disadvantage of information and expertise, and was at the mercy of his partners."

However, a mistake on Cooke's part concerning the legality of the partnership agreements does not render the agreements enforceable. Parties to a contract are presumed to be knowledgeable of the law, which is why courts will generally leave parties to an illegal contract as they find them. *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 618 (Tex. App.—Fort Worth 2017, pet. denied) (citing *Plumlee v. Paddock,* 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied)). Stated differently, "courts are no more likely to aid one attempting to enforce such a contract than they are disposed in favor of the party who uses the illegality to avoid liability." *Id.* Indeed, Cooke's belief that the partnership relationship was legal is simply not relevant. *See Small*, 2013 WL 5827822, at *5 (citing *Plumlee,* 832 S.W.2d at 759).

We agree with our sister court's holding in *Lon Smith* that instead of a mistake of law, invocation of the *in pari delicto* doctrine requires a mistake of fact, specifically the situation wherein "the illegality of the transaction depends on the existence of peculiar facts known to the defendant but unknown to the plaintiff." 527 S.W.3d at 618. In that case, the court explained the relevant distinction:

> [W]here a person sues for services rendered another in an occupation which is illegal, unless the employer is duly licensed to carry it on, which he is not, such person may recover unless he knew that the employer had no license, for while he is bound to know that the employer must have a license to make the business legal, his mistake as to his having such license is a mistake of fact and not of law.

*Id.* (quoting *Oakes v. Guarantee Ins. Co.*, 573 S.W.2d 899, 902 (Tex. App.—Eastland 1978, writ ref'd n.r.e.)). There is no mistake of fact in Cooke's case. What makes the partnership agreements illegal are his lack of a license to engage in title insurance business and his acceptance of fee splits as an unlicensed partner in the title insurance business. Whether or not he knew the agreements were illegal, he certainly knew that he was not licensed and that he was accepting fee splits as a partner. *See id.*

We conclude that the *in pari delicto* exception does not apply in this case to render the illegal partnership agreements enforceable.

*Public Policy*

Appellants also contend that the public policy of our State argues for enforcing the partnership agreements. They rely on the opinion in *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 110 (Tex. App.—San Antonio 2011, pet. denied), which holds that

–17–

even when parties are *in pari delicto*, relief may be granted if public policy demands it. Appellants urge us to apply that holding here.

Appellants argue first that the TDI has extensive authority to regulate the insurance industry and to protect the public and that its authority should not be "usurped" by the courts. Indeed, the TDI has weighed in on the legitimacy of the partnership agreements that governed the Business Entities and concluded that the fee splitting envisioned by the agreements violated the insurance code and was sanctionable. Appellants point to evidence that "shows that [the] TDI was prepared, in its discretion, to conclude that the parties' business arrangement was 'reasonable'" at one point in its investigation. But that preliminary conclusion was based upon the inaccurate representation that Cooke was a bona fide employee of Karlseng and his fee office. He was not. We note in this context as well that it was Cooke who initially invoked the courts' involvement in this dispute; he asked the trial court to enforce his partnership rights under the agreements. Having sought resolution by the courts, Cooke cannot now say that it is contrary to public policy for the courts to rule. If the law disallows the enforcement he seeks, the courts must say so.

Appellants next argue that the public policy that the title insurance regulations aim to promote will not be furthered by invalidating the partnership agreements. We do not quarrel with appellants' assertion that a motivation for the regulations was to limit payments of rebates and discounts to certain providers. However, the statute is broader than those specific limits. It specifically prohibits splitting a portion of a title

insurance premium with any person "for soliciting or referring title insurance business." INS. § 2502.051. Cooke acknowledges his role in the title insurance business was advertising, i.e., soliciting title insurance business on behalf of the Business Entities. We cannot conclude that the policy behind a statute is supported by enforcing its prohibitions in some instances but not in others.

Finally, appellants contend that a failure to enforce the partnership agreements would unjustly enrich cross-appellants. Of course Cooke does not deny that he was "enriched" during the tenure of the illegal contracts nor that he was paid for his efforts in assisting in the re-organization of the businesses. We cannot say that equity demands that Cooke receive more through this litigation.

None of appellants' policy arguments persuade us that we should abandon the judicial policy against enforcing illegal contracts. This policy is not intended to protect or punish either party to the contract; it is for the benefit of the public. *Plumlee*, 832 S.W.2d at 759. "Courts are no more likely to aid one attempting to enforce such a contract than they are disposed in favor of the party who uses the illegality to avoid liability." *Id.*

We affirm the trial court's grant of summary judgment on cross-appellant's illegality defense. The trial court correctly determined that Cooke should take nothing on his individual and derivative claims seeking to recover damages based on the ongoing operation of any of the Business Entities.

## CONCLUSION

We affirm the trial court's denial of cross-appellants' plea to the jurisdiction and its denial of cross-appellants' motion for summary judgment based on the statute of limitations. We affirm the trial court's grant of summary judgment on cross-appellants' motion for summary judgment on the defense of illegality.[11] We direct that Cooke shall take nothing on his claims—individual and derivative—based on the ongoing operation of any of the Business Entities.

Based on the trial court's Order, we remand this cause so that Cooke may pursue his claim regarding recovery of assets of the Business Entities.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

---

[11] Given that resolution, we need not reach appellants' challenge to the trial court's grant of summary judgment on the business judgment rule.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

H. JONATHAN COOKE, INDIVIDUALLY AND ON BEHALF OF ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP, INC.; ESCROW PARTNERS AUSTIN, L.P.; ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.; ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC, Appellants

No. 05-18-00206-CV          V.

ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; AND LEBLANC, PATTEN & KARLSENG LAW FIRM, P.C., Appellees

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-06-02783-L.
Opinion delivered by Justice Pedersen, III. Justice Schenck participating.

–21–

In accordance with this Court's opinion of this date, the trial court's February 6, 2018 Second Amended Order Granting Defendants' Motion for Summary Judgment on Defendants' Illegality and Business Judgment Rule Defenses and Amended Order on Defendants' Plea to the Jurisdiction and Traditional Motion for Partial Summary Judgment Related to the Business Entities' Claims is **AFFIRMED**.

It is **ORDERED** that appellees Robert C. Karlseng; Karlseng Law Firm, P.C.; Ashley Brigham Patten; Patten & Karlseng Law Firm, P.C.; Jacques Yves LeBlanc; and LeBlanc, Patten & Karlseng Law Firm, P.C. recover their costs of this appeal from appellants H. Jonathan Cooke, individually and on behalf of Escrow Partners Dallas, L.P.; Escrow Partners Dallas, GP, Inc.; Escrow Partners Houston, L.P.; Escrow Partners Houston, GP, Inc.; Escrow Partners Austin, L.P.; Escrow Partners Austin, GP, Inc.; Escrow Partners San Antonio, L.P.; Escrow Partners San Antonio, GP, Inc.; Title Partners, L.L.P.; North American Management, L.L.P.; TJ Partners I, LLC; and TJ Partners II, LLC.

The cause is **REMANDED** for determination of H. Jonathan Cooke's claim regarding recovery of assets of Escrow Partners Dallas, L.P.; Escrow Partners Dallas, GP, Inc.; Escrow Partners Houston, L.P.; Escrow Partners Houston, GP, Inc.; Escrow Partners Austin, L.P.; Escrow Partners Austin, GP, Inc.; Escrow Partners San Antonio, L.P.; Escrow Partners San Antonio, GP, Inc.; Title Partners, L.L.P.; North American Management, L.L.P.; TJ Partners I, LLC; and TJ Partners II, LLC.

Judgment entered this 12th day of April, 2022.